IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EMMA ROBBINS,

   Plaintiff,                                  Case No.:

vs.

DEAN LEWIS CAMPBELL,

   Defendant.

## COMPLAINT

Plaintiff, Emma Robbins ("**Robbins**"), files this Complaint against defendant, Dean Lewis Campbell, individually ("**Campbell**") and alleges the following:

### I.   INTRODUCTION

1. American author Robert Greene once observed: "*We do not see people as they are, but as they appear to us. And these appearances are usually misleading.*" His words capture the tragic reality of Campbell's duplicity. Campbell presented himself as a trusted family friend, a mentor, and a protector. In truth, he betrayed that trust in the most devastating way—by isolating Ms. Robbins under the guise of hospitality and assaulting her while she was unconscious.

2. This case is about power, betrayal, and the violent destruction of trust.

Campbell's acts were not a misunderstanding — they were deliberate, predatory, and criminal."

3. Dean Lewis Campbell — a 58-year-old high-ranking corporate executive — betrayed the trust of his long-time friend's niece, Robbins. Nearly three decades her senior, Campbell, positioned himself as a role model and protector, assuring Robbins and her family that she would be safe in his company. Instead, he exploited that trust by isolating Robbins and sexually assaulting her while she was incapacitated and defenseless. This was not only a profound abuse of power and friendship, but a deliberate violation of the faith placed in him by those who believed he was a man of integrity. The result is catastrophic: Robbins now lives with permanent physical injuries, post-traumatic stress disorder, depression, and the destruction of her chosen career. His actions shattered her sense of safety, dignity, and trust in others — losses that cannot be undone.

4. Campbell's sexual battery and rape have severely traumatized Robbins. Robbins has suffered from near-daily emotional distress, panic attacks, self-isolation, social anxiety, feelings of hopelessness, and dissociation.

5. Robbins brings this action to recover compensatory and punitive damages for the significant harm Campbell caused as a result of his deliberate and reprehensible acts.

## II.   PARTIES

6. Plaintiff Robbins is a resident and citizen of New South Wales, Australia.

7. Defendant Campbell is a resident and citizen of St. Petersburg, Florida; he also maintains a residence and business interest in New York, New York, as a Global Executive Vice President of JLL.

## III.   JURISDICTION

8. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and there is complete diversity between the parties.

9. The tortious conduct alleged herein occurred in St. Petersburg, Florida on the evening of May 02, 2025. Therefore, pursuant to § 48.193(1)(a)2., Florida Statutes, Campbell is subject to jurisdiction of courts in the state of Florida.

## IV.   VENUE

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in all or a substantial part of the events or omissions giving rise to this claim occurred in this district. Pursuant to § 47.011, Florida Statutes, Defendant Campbell  resides in

Pinellas County, Florida, and the cause of action accrued in Pinellas County, Florida. Therefore, venue is proper in the United States District Court for the Middle District of Florida, Tampa Division.

## V. FACTUAL ALLEGATIONS

### a. Before The Incident

11. Robbins is a 28-year-old, a former Australian sexual abuse lawyer, who was born and raised in New South Wales, Australia. She comes from a highly conservative and close-knit family.

12. Robbins was an astute, client-focused lawyer with over 5 years experience. She was pursuing a Master of Forensic Mental Health to add insight into her legal practice. Robbins had an eye on moving to America to continue her trade.

13. Campbell was a long-time friend (35 years) of Robbins' family.

14. Campbell is the Global Executive Vice President of Solutions Development within JLL's Work Dynamics business, operating out of the firm's New York office, located at: 330 Madison Avenue, 4th Floor, New York, New York 10017.

### b. Leading Up To The Incident

15. At some point, Robbins traveled from Australia to St. Petersburg,

Florida. Robbins planned to stay with her friend Courtney Vilimek ("**Vilimek**") and her husband for the duration of the trip.

16. During the trip, Robbins and Vilimek made plans to have dinner with Campbell at *Allelo*. Campbell being a long-time friend of Robbins' uncle, offered to show Robbins and Vilimek the town.

17. On the evening of May 2, 2025, Robbins and Vilimek met Campbell at his condominium in St. Petersburg, Florida. From there, Campbell, Robbins, and Vilimek went to dinner at *Allelo*. Dinner lasted approximately 3 hours.

18. During dinner Campbell gave Robbins the impression that the initial meeting would lead to a professional "mentor/mentee" relationship.

19. Campbell also spoke about his professional success before shifting the conversation into personal territory—he expressed a desire for "girl talk," including discussions about dating apps and the women he had been speaking to.

20. After dinner, Campbell, Robbins, and Vilimek went to a nearby bar called *Tryst*. After an evening of dancing and friendly social interaction at Tryst, all three went to another bar.

21. The second venue — Good Night John Boy — was crowded and playing loud music. At one point, Campbell started dancing behind Robbins. She felt Campbell grinding his penis on her but assumed, due to the crowd, that it was an accident.

22.     Shortly thereafter, Campbell brushed his hand across Robbins' chest. Campbell's action invaded Robbins' privacy and made her feel very uncomfortable. However, Robbins' again gave Campbell the benefit of the doubt because she trusted Campbell as a long-time family friend and looked up to him professionally.

23.     At some point, while Campbell, Robbins, and Vilimek were at Good Night John Boy, Campbell digitally (finger) penetrated Robbins against her will and despite a clear refusal.

### c. Campbell *knowingly administered an intoxicant* to facilitate the assault

24.     Robbins was a solo female tourist in a new city and country. She was especially mindful not to become overly intoxicated. Robbins had eaten a substantial dinner and paced herself while consuming alcohol.

25.     Upon information and belief, Campbell spiked Robbins' drinks with an intoxicant, causing sudden incapacitation. A true and correct copy of Vilimek's declaration is attached as **Exhibit A.**

26.     Robbins experienced sudden and complete memory loss, accompanied by physical symptoms consistent with being drugged, including absence of hangover, vomiting blood, loss of head control, muscle collapse, and total incapacitation.

27.     Robbins symptoms were corroborated by the nurse after the SAFE

exam.

### d. The Incident

28. After leaving Good Night John Boy, Campbell, Robbins, and Vilimek went to a bar called *Glamper*. Vilimek and Robbins barely touched the drinks ordered for them by Campbell.

29. After leaving Glamper, Campbell, Robbins, and Vilimek went to Campbell's condominium in St. Petersburg, Florida.

30. Campbell brought Vilimek and Robbins wine. Vilimek noticed that Robbins and Vilimek's wineglasses differed from Campbell's wineglass and were only filled with about an inch pour. Vilimek was suspicious and did not drink the wine. Robbins took a few sips and within minutes, her head dropped heavily onto the table. Robbins appeared disoriented. Campbell then instructed that *"It's time for bed."*

31. Robbins fell asleep on the couch in the front room. Vilimek placed a blanket over Robbins. Vilimek then went into the guest bedroom. Campbell closed the guest bedroom door behind Vilimek.

32. Vilimek heard "loud thudding noises." She heard more thuds, got worried, and went to check on Robbins. However, Robbins was no longer on the couch.

33. Vilimek went into Campbell's bedroom and witnessed Campbell

directly on top of Robbins — who was unconscious. Upon hearing Vilimek enter the room, Campbell rolled off Robbins, and rustled the covers, but his white brief underwear was visible to Vilimek. In total, roughly 15 minutes lapsed from the time Vilimek went into the guest bedroom to the time she eye-witnessed Campbell "on top of" Robbins.

34. Vilimek immediately stepped in and attempted to move Robbins but Robbins began vomiting while remaining non-verbal with her eyes closed.

35. Vilimek noticed blood on Robbins' inner thighs when she helped Robbins changed her clothes. Vilimek and Robbins immediately left Campbell's Condominium, Robbins was unable to walk, so Vilimek helped Robbins exit the premises.

36. On the ride to Tampa General Hospital, Robbins assumed a fetal position and began crying and rocking.

37. Robbins verbally confirmed that "Campbell digitally penetrated Robbins against her will at the bar "Good Night John Boy" and "Campbell later penetrated her with his penis while she was unconscious in his bedroom." Vilimek called 911 and spoke to a dispatcher until they arrived at the police station.

   e.   **The Aftermath**

38. Robbins underwent a SAFE exam at Suncoast Center.

Medical evidence from the SAFE exam documented vaginal tearing, internal bleeding, bruising on her thighs and legs, and physical trauma inconsistent with consensual sexual activity.

39. Campbell admitted via text messages that he moved Robbins' unconscious body from the couch to his bed, confirming lack of capacity to consent.

40. Following the sexual battery, Campbell attempted to minimize, excuse, and conceal, his actions in text messages sent to Robbins and her family members, demonstrating his awareness of guilt. Those messages are attached as **Exhibit B**

41. As a direct result of Campbell's misconduct, Robbins suffered:

(1) physical injuries including vaginal tears, bruising, and pain; (2) severe psychological injuries, including Post-Traumatic Stress Disorder (PTSD), depression, nightmares, and social withdrawal; (3) career disruption — having been forced to abandon her legal career in sexual abuse law due to trauma; and (4) ongoing medical expenses, therapy costs, and diminished earning capacity.

42. In the days after the rape, Robbins feared she could have contracted a sexually transmitted disease ("**STD**") from Campbell. Specifically, Robbins was prescribed *Tivicay* and *Truvada*, medication to reduce the risk of STDs. Robbins had to take this medication for 28 days.

43. For months after the rape, Robbins did her best to put what happened out of her mind. As is typical with many victims of rape, she made attempts to live her life as if nothing happened. Those attempts to compartmentalize, deny and normalize her life proved unsustainable.

44. After several months, the shock, disbelief, and denial gave way to overwhelming bouts of anxiety, and Robbins fell into a deep depression. She has had near-daily panic attacks, insomnia, severe psychological trauma including diagnosed PTSD, depression, nightmares, social withdrawal, and permanent loss of trust in men. It has been extremely difficult for her to process that Campbell could betray and violate her so completely. Campbell devastated her sense of self, made her question her worth as a woman and human being, and caused her to question whom she could trust.

45. In sum, Campbell has inflicted severe and lasting harm on Robbins — damage that touches every aspect of her personal and professional life. She will carry the physical and emotional scars of his assault for the rest of her life, and she will never be the same. Since the rape, Robbins has been unable to return to her career as a sexual abuse lawyer, the very profession in which she once sought to help others, because the trauma makes it unbearable to confront cases that mirror her own.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Sexual Battery (Rape – Penile Penetration)

46. Plaintiff repeats and realleges paragraphs 1 through 45 as if fully set forth herein.

47. On May 2, 2025, Defendant Campbell had nonconsensual sexual intercourse with Robbins. See 794.011(1)(a) and (1)(f), Fla. Stat.

48. Robbins' was incapable of consent because she was unconscious.

49. Because Robbins was unconscious, it was known to Campbell, or reasonably should have been known to Campbell, that Robbins did not consent, would not consent, and was not consenting at any time material to the acts described above.

50. Campbell committed "sexual battery" as that term is defined in § 794.011(1)(j), Fla. Stat.

51. The sexual battery described above directly and proximately caused Robbins' injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

52. As a direct and proximate result of the foregoing, Robbins has suffered bodily injury, emotional distress, mental disturbance, fright, revulsion, humiliation, pain and suffering, disability, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages, and

substantial medical and other expenses for treatment and care, past, present, and future. Those losses, injuries, and expenses are either permanent or continuing in nature and Robbins will continue to suffer same in the future.

53. Campbell acted maliciously, wantonly, or with a recklessness suggestive of an improper motive or vindictiveness, to warrant the imposition of punitive damages as allowed by Florida law.

WHEREFORE, Plaintiff, Emma Robbins, demands judgment against Defendant, Dean Lewis Campbell, for damages, costs, interest, and other such relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Sexual Battery – Digital (finger) Penetration)

54. Plaintiff repeats and realleges paragraphs 1 through 45 as if fully set forth herein.

55. Campbell engaged in inappropriate sexualized behavior, which included (1) grinding his penis against Robbins while dancing; (2) touching Robbins' chest; and (3) digitally penetrating her without consent.

56. Campbell's action invaded Robbins' privacy and made her feel very uncomfortable.

57. Campbell committed "sexual battery" as that term is defined in § 794.011(1)(h), Fla. Stat.

58. By intentionally grinding his penis against Robbins, touching her chest, and digitally penetrating her, Campbell made offensive and unwanted contact upon Robbins– a battery and sexual battery.

59. The battery described above directly and proximately caused Robbins' injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

60. As a direct and proximate result of the foregoing, Robbins' has suffered emotional distress, mental disturbance, fright, revulsion, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages, and substantial medical and other expenses for treatment and care, past, present, and future. Those losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

61. Campbell acted maliciously, wantonly, or with a recklessness suggestive of an improper motive or vindictiveness, to warrant the imposition of punitive damages as allowed by Florida law.

WHEREFORE, Plaintiff, Emma Robbins, demands judgment against Defendant, Dean Lewis Campbell, for damages, costs, interest, and other such relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
### (Battery – Drugging )

62. Plaintiff repeats and realleges paragraphs 1 through 45 as if fully set forth herein.

63. Campbell engaged in inappropriate behavior, including administering a date rape drug to Robbins.

64. Campbell's actions caused Robbins to unknowingly ingest a substance that caused Robbins to be "physically helpless." See 794.001(1)(f), Fla. Stat.

65. By intentionally administering a date rape drug to Robbins, Campbell made offensive and unwanted contact upon Robbins– a battery.

66. The battery described above directly and proximately caused Robbins' injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

67. As a direct and proximate result of the foregoing, Robbins' has suffered emotional distress, mental disturbance, fright, revulsion, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages, and substantial medical and other expenses for treatment and care, past, present, and future. Those losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

68.  Campbell acted maliciously, wantonly, or with a recklessness suggestive of an improper motive or vindictiveness, to warrant the imposition of punitive damages as allowed by Florida law.

WHEREFORE, Plaintiff, Emma Robbins, demands judgment against Defendant, Dean Lewis Campbell, for damages, costs, interest, and other such relief as this Court deems just and proper.

### FOURTH CAUSE OF ACTION
### Invasion of Privacy
### (Intrusion Upon Seclusion / Sexual Autonomy)

69.  Plaintiff repeats and realleges paragraphs 1 through 45 as if fully set forth herein.

70.  Campbell's unwanted and offensive sexual contact with Robbins was an invasion of her physical solitude and privacy.

71.  The invasion of privacy directly and proximately caused Robbins' injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

72.  As a direct and proximate result of the foregoing, Robbins has suffered bodily injury, emotional distress, mental disturbance, fright, revulsion, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages, and substantial medical and other expenses for treatment

and care, past, present, and future. Those losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

73. Campbell acted maliciously, wantonly, or with a recklessness suggestive of an improper motive or vindictiveness, to warrant the imposition of punitive damages as allowed by Florida law.

WHEREFORE, Plaintiff, Emma Robbins, demands judgment against Defendant, Dean Lewis Campbell, for damages, costs, interest, and other such relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
### (Intentional or Negligent Infliction Of Emotional Distress)

74. Plaintiff repeats and realleges the paragraphs 1 through 45 as if fully set forth herein.

75. Campbell orchestrated and enacted a series of intentional actions that identified as follows:

    a. Campbell engaged in inappropriate sexualized behavior, including grinding his penis against Robbins and brushing his hands across her chest despite her discomfort.

    b. Campbell digitally penetrated Robbins at the bar Good Night John Boy despite her clear verbal refusal.

      c.      Campbell drugged Robbins's beverage with the intent of performing sexual intercourse with Robbins while she was unconscious.

      d.      Campbell dragged an unconscious Robbins from the front room couch to his bedroom, climbed on top of her, and began having nonconsensual intercourse with Robbins.

      e.      Campbell attempted to minimize, excuse, and conceal his actions in messages sent to Robbins and her family members, demonstrating his awareness of guilt.

76. Using his position as a high-ranking corporate executive and trusted family acquaintance, Campbell manipulated and lured Robbins into his social orbit under the guise of mentorship and protection. Campbell exploited his status and authority to supply her with alcohol and, upon information and belief, intoxicants that rendered her incapacitated, and unable to understand, appreciate, or consent to sexual acts. Campbell's exploitation of his professional stature, age, and relationship of trust to violate Robbins' sexual autonomy constitutes conduct that is extreme, outrageous, and intolerable in a civilized society.

77. This extreme and outrageous conduct directly and proximately caused Robbins' injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

78. As a direct and proximate result of the foregoing, Robbins has suffered severe and ongoing emotional distress, mental disturbance, fright, revulsion, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, along with consequential damages as a result of severe distress. Those losses, injuries, and expenses are permanent or continuing, and Robbins will continue to suffer the same in the future.

79. Campbell acted maliciously, wantonly, or with a recklessness suggestive of an improper motive or vindictiveness, to warrant the imposition of punitive damages as allowed by Florida law.

WHEREFORE, Plaintiff, Emma Robbins, demands judgment against Defendant, Dean Lewis Campbell, for damages, costs, interest, and other such relief as this Court deems just and proper.

## VII.  CONDITIONS PRECEDENT

80. All conditions have been satisfied, excused, or waived.

## VIII.  DEMAND FOR JURY TRIAL

81. Plaintiff demands a trial by jury on all issues so triable.

Dated this 2nd  day of October, 2025.

Respectfully submitted,

/s/ Nicholas A. Chiappetta
Nicholas A. Chiappetta, Esq.
Florida Bar No: 1006407
**Chiappetta Trial Lawyers**
*Attorneys for Plaintiff*
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax: (561) 768-4600
Service@chiappettalegal.com
nick@chiappettalegal.com

***Designated Lead Counsel***